IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ERNEST HENDERSON,            :

     Plaintiff,            :

vs.                          :      CA 09-0769-CG-C

NCO FINANCIAL SYSTEMS,       :

     Defendant.            :


## REPORT AND RECOMMENDATION

This matter is before the undersigned pursuant to 28 U.S.C. §
636(b)(1)(B) on Defendant's Fed.R.Civ.P. 12(b)(6) Motion to Dismiss,
(Doc. 6) filed January 7, 2010, along with its supporting brief (Doc. 7), and
supplement (Doc. 13). After consideration of the motion, it is the
undersigned's recommendation that it be **GRANTED**.

## I.      Background.

On November 20, 2009, Plaintiff Henderson filed a complaint in this
Court against Defendant NCO Financial Systems (hereafter "NCO"),
alleging that he was "sexually harassed and harassed by [his] female co-
workers on a continuous basis" and was "asked for sex by one of [his] co-
workers." (Doc. 1, p. 2.) Henderson also averred that he was "shown
naked pictures of a woman after giving birth and [that] she asked me did I

see [sic] the pictures of her naked baby." (*Id.*)  Henderson also stated that

he was "demeaned" after he filed charges, and that the ensuing retaliation

"went through the roof," including physical abuse and, finally, termination.

(*Id.*)  Henderson then complains that upon going to the EEOC, "a thorough

investigation was not done, or no investigation at all."  (*Id.*)  Henderson

argues for relief under both Title VII of the Civil Rights Act of 1964 and

under the Civil Rights Act of 1991, concluding that he "has not been given

any support from the EEOC and [has] been harassed a lot after [he] was

fired from NCO."  (*Id.* at 3-4.)

      One problem immediately stands out from Henderson's complaint,

however.  After explaining his rather tumultuous living arrangements from

mid-2009 onwards, Henderson seems to acknowledge that he has filed his

complaint after the 90-day window litigants face after receiving their "right

to sue" letter from the EEOC.  States Henderson:

> I was homeless from June 28, 2009 until August 21, 2009.  I
> lived at the Waterfront Rescue Mission; 206 State St. Mobile,
> AL 36603-6423, (251) 433-1847, from June 28, 2009 until
> July 2, 2009.  I then moved into another homeless shelter on
> July 3, 2009 at 255 Church St. Mobile, AL 36601[,] called the
> Lou Principe Foundation.  I was asked to leave that facility on
> August 7, 2009[,] and moved into my apartment on August
> 21, 2009.  I was working at Ryla, Inc. and was getting mail at
> 1205 Creekway Drive.  My sister refused to give me my mail
> and I did not receive the letter of right to sue until September
> 22, 2009[,] when I took a day off from work and went over
> [to] my mother's house and receive[d] my mail and responded
> two weeks after[wards] to [the] EEOC.  I have enclosed a

> copy of [the] express mail receipt signed on 10/06/09 . . .
> When you read the right to sue [letter,] it says [that] you have
> 90 days to file your case after the receipt of the letter . . .
> Since I received the mail on 9/22/09[,] I have 90 days from
> that date.  So filing in November of 2009 is still within my 90
> days of receipt of this letter.

(*Id*. at 3.)

Unsurprisingly, NCO filed their motion to dismiss (Doc. 6) on January 7, 2010, asking this Court to dismiss the complaint "because all of the claims and causes of action asserted in the [c]omplaint are barred by the applicable 90-day limitations period."  (Doc. 6, p. 1.)  Attached to the supporting brief (Doc. 7) to NCO's motion to dismiss as "Exhibit A" is a letter to Defendant Henderson from the EEOC explaining that after investigation, the Commission "is unable to conclude that the information obtained establishes violations of the statutes."  (Doc. 7, p. 13.)  Under the heading "Notice of Suit Rights," the letter states that Henderson may file a lawsuit against NCO under federal law "based on this charge," but explicitly states that such a suit must be filed within 90 days of the receipt of the letter.  (*Id*.)  The letter continues to admonish Henderson that "in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed within 90 days of the date this Notice was *mailed* to you (as indicated where the Notice is signed) or the date of the postmark, if later."  (*Id*. at 14.)  Importantly, the letter bears a mailing date

3

of July 6, 2009.  (*Id*. at 13.)

NCO's argument in favor of dismissal consists of two basic points. First, Henderson filed his compliant more than 90 days after the EEOC mailed his "right to sue" letter to the address he provided to the EEOC. "Because [P]laintiff failed to notify the EEOC that he no longer lived at that address or provide the EEOC with new contact information," NCO contends, "[P]laintiff is not entitled to extend" the period for filing his complaint.  (Doc. 7, p. 1.)  NCO's second argument that Henderson's case should be dismissed is that Henderson *actually could still have filed his complaint within the relevant period* even by his own confession, and yet chose not to do so.  (*Id*.)  For support, NCO points to the complaint, in which Henderson admits that he did not file his complaint until November 20, 2009 despite actually receiving the letter on September 22, 2009.  (Doc. 1, p. 3; Doc. 7, p. 1-2.)  When he learned of the letter on September 22, 2009, NCO observes, Henderson still had until October 7, 2009, to file suit legitimately, and his failure to do so is therefore inexcusable.  (Doc. 7, p. 2.)

Regardless, the undersigned entered an order (Doc. 12) on January 11, 2010, giving Henderson until January 25, 2010 to respond to the motion, a course of action Henderson has neglected to pursue, giving the motion an unopposed stature.  On January 28, 2010, however, NCO filed a supplement (Doc. 13) to its motion to dismiss showcasing its efforts to serve filed copies of the motion to dismiss on Henderson:

4

> Upon electrically filing its Motion to Dismiss through the Court's
> ECF/CMF Pacer System on January 7, 2010, Defendant NCO
> attempted to serve filed copies of the Motion to Plaintiff at the
> multiple contact addresses Plaintiff gave to the Court.  A copy was
> sent via United States Certified Mail to Plaintiff's post office box,
> as well as a copy being simultaneously sent via Federal Express to
> Plaintiff's home home address.  The Federal Express delivery was
> returned as "undeliverable" to NCO's counsel.  The copy sent to
> Plaintiff via certified mail has not been retrieved by Plaintiff from
> his post office box.  Another copy of the Motion to Dismiss was
> mailed to the last known address NCO had for Mr. Henderson . . .
> Plaintiff has not filed his response to Defendant's [m]otion, nor has
> he submitted a response to NCO's counsel.

(Doc. 13, p. 1-2.)  Attached to the supplement is an affidavit from Laura C.

Nettles, NCO's attorney of record, explaining that she attempted to serve Mr.

Henderson with the motion to dismiss by sending it to both of the addresses that

Henderson supplied to the Court, but that Henderson has yet to retrieve the

package from the P.O. box, and that the Federal Express package was returned as

undeliverable on January 11, 2010.  (Doc. 13-1, p. 2-3.)  The affidavit also states

that Nettles mailed a copy of the motion to dismiss to the last address that NCO

had for Henderson, and relates that this last attempt "has not been returned from

the post office as undeliverable."  (*Id*. at 3.)

## II.     Discussion.

### A.     Motion to Dismiss Standard(s)

To survive a 12(b)(6) motion to dismiss, a complaint must comply

with Rule 8(a)(2) by providing "a short and plain statement of the claim

showing that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 129 S.Ct.

1937, 1949 (2009) (internal citations and quotations omitted).  While Rule

8's pleading standard "does not require detailed factual allegations," it does demand "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id*. at 1949 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted)). Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (citing *Twombly*, *supra*, at 555). Put another way, "[n]or does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id*. (citing *Twombly*, *supra*, at 557).

After this bar has been passed, the undersigned notes that "when considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)). Where, however, a document not attached to the complaint is considered by the Court, the Court may elect not to convert the motion to dismiss into a motion for summary judgment if that document is "central to the plaintiff's claims and . . . undisputed, meaning that the authenticity of the document is not challenged." *Hodge v. Orlando Util. Comm'n*, 2009 WL 5067758, *3 (M.D.Fla. Dec. 15, 2009) (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th

Cir. 2005)).  The *Hodge* Court then expressly held that an EEOC right-to-sue letter may be considered without converting the motion to dismiss into one for summary judgment.  *Id.* at *4.  Although pleadings that are "no more than conclusions are not entitled to the assumption of truth," a court faced with "well-pleaded factual allegations" should "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief," a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950 (internal citations omitted).  *Iqbal* continues by noting that according to Rule 8(a)(2), "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged– but it has not shown– that the pleader is entitled to relief." *Id.* (internal citations and quotations omitted).

Next, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1949 (citing *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Furthermore, *Iqbal* explains that [t]he plausibility standard is not akin to a 'probability requirement,'" but does ask "for more than a sheer

possibility that a defendant has acted unlawfully," stating that "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 556-57).  Put yet another way, a plaintiff must put forth allegations in his or her complaint that nudge their claims "across the line from the conceivable to the plausible."  *Id.* (citing *Twombly*, 550 U.S. at 570).  Finally, "[a] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits."  *McTernan v. City of York*, *PA*, 564 F.3d 636, 646 (3rd Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3rd Cir. 2008)) (in turn quoting *Twombly*, 550 U.S. at 553, n. 8).

## B.    EEOC's Statute of Limitations

The undersigned notes, as an initial matter, that "commencing an action within ninety days of receipt of a[n EEOC] right-to-sue letter is not a jurisdictional prerequisite; rather, the ninety-day requirement is akin to a statute of limitations."  *Espinoza v. Missouri Pacific Railroad Co.*, 754 F.2d 1247, 1249 (5th Cir. 1985).  *See also Hornsby v. United States Postal Serv.*, 787 F.2d 87, 89 (3rd Cir. 1986) ("The time limits in Title VII are in the nature of statutes of limitation.").  Dismissal under 12(b)(6) of the Federal Rules of Civil Procedure, in turn, "is appropriate only if it is apparent from

8

the face of the complaint that the claim is time-barred." *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 (11th Cir. 2005) (citing *La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)). *See also Omar v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir. 2003) (per curiam) (stating, albeit in the §1983 context, that "it is proper to grant a Rule 12(b)(6) motion if noncompliance with the statute of limitations is apparent on the face of the complaint.").

### C.    Analysis

Here, it is painstakingly clear that Henderson has not complied with the ninety-day notice provided by the EEOC.  42 U.S.C. § 2000e-5(f)(1) provides that a Title VII plaintiff must bring his complaint within 90 days of the receipt of a right-to-sue letter from the EEOC.  *See also Law v. Hercules*, *Inc.*, 713 F.2d 691, 692 (11th Cir. 1983) (per curiam); *Santini v. Cleveland Clinic Florida*, 232 F.3d 823, 825 (11th Cir. 2000) (per curiam); *Hodge*, 2009 WL 5067758, at * 4.  Upon a defendant's allegation that a given plaintiff has filed outside of this 90-day window, the legal burden falls on the plaintiff to show otherwise.  The Eleventh Circuit made clear in *Green v. Union Foundry Co.*, 281 F.3d 1229, 1234 (2002) that "[o]nce the defendant contests this issue, the plaintiff has the burden of establishing that he met the ninety[-]day filing requirement."  Following clearly established Eleventh Circuit precedent, the determination of what actions constitute a

Title VII plaintiff's "receipt" of a right-to-sue letter must be decided based on the individual characteristics of a given fact pattern.

First, consider the case of *Bell v. Eagle Motor Lines, Inc.*, 693 F.2d 1086 (11th Cir. 1982) (per curiam).  There, the plaintiff appealed the district court's grant of summary judgment in favor of the defendant after determining that the 90-day period for filing suit had been breached.  *Id.* The plaintiff's wife accepted and signed for the EEOC right-to-sue letter while he was out of town, and he supposedly did not learn of the letter until some eight or nine days later.  *Id.* at 1086.  In holding that the ninety-day clock started running upon the arrival of the letter to the address provided by the would-be plaintiff, the Court stressed that the determination of when an EEOC letter is received should be decided on a case-by-case basis:

> We need not embrace the doctrine of constructive receipt, nor close our eyes to the liberal construction the act is entitled to in order to fashion a fair and reasonable rule for the circumstances of this case.  There is no reason why a plaintiff should enjoy a manipulable open-ended time extension which could render the statutory limitation meaningless.

*Id.* at 1087.  Next, in *Law v. Hercules*, 713 F.2d 691 (11th Cir. 1983) (per curiam), the Title VII plaintiff's seventeen-year-old son picked up the EEOC letter on his way home from school and placed it on the kitchen table.  *Id.* at 692.  The plaintiff then claimed that he did not become aware of the letter until a few days later, and so he filed his suit a total of 91 days

after his son signed for the letter at the post office. *Id.* Declining to establish an "actual receipt rule" which would have begun the clock at the time the plaintiff claims to have become aware of the letter, the Eleventh Circuit upheld the statutory foreclosure of the claim, stating that to hold otherwise would be to "foster a manipulable open-ended time extension which would render the statutory limitation meaningless," again following the above-quoted language from *Lewis*. *Id.* at 693 (internal quotations omitted). *See also Green*, 281 F.3d at 1234 (holding that even though the plaintiff was "incarcerated at the time the [right-to-sue] letter was mailed," his wife's reception of the letter activated the 90-day clock and because he could not "rebut the fact that ninety-seven days elapsed from the date of mailing to the date of filing," the district court's grant of summary judgment was proper).

The interpretation of "receipt" as when the letter actually arrives at the address supplied to the EEOC gains additional support by the legal presumption that "[w]hen a plaintiff does not assert that he or she received the right-to-sue letter on a specific date, the Court presumes the plaintiff received the letter three days after it was mailed," which clearly is an estimation of how long the letter may have taken to reach the specified address. *Marshall v. Eadison*, 2005 WL 3132352 (M.D.Ga. Nov. 22, 2005) (citing *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 148 (1984));

11

*Taylor v. Books A Million*, *Inc.*, 296 F.3d 376, 379 (5ᵗʰ Cir. 2002);

*Seitsinger v. Reading Hospital and Medical Center*, 165 F.3d 236, 239 (3ʳᵈ

Cir. 1999); and *Sherlock v. Montefiore Medical Center*, 84 F.3d 522, 526

(2ⁿᵈ Cir. 1996)).  Over time, however, the Eleventh Circuit has slightly

modified its stance regarding when the 90 day clock runs.  Said the Court in

*Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11ᵗʰ Cir. 2005) (per curiam):

"As we have explained, the 90 days commence at the time the 'complainant

has adequate notice that the EEOC has dismissed the Charge.'" *Id*. (citing

*Santini*, 232 F.3d at 825).  In *Kerr*, the Eleventh Circuit again eschewed a

bright-line rule for when adequate notice has been given to a potential Title

VII plaintiff, stating instead that:

> [T]he 90-day limitations period is to be analyzed on a case by
> case basis to fashion a fair and reasonable rule for the
> circumstances of each case, one that would require plaintiffs
> to assume some minimal responsibility . . . without
> conditioning a claimant's right to sue . . . on fortuitous
> circumstances or events beyond [his] control.

*Id*. at 952 (citing *Zillyette v. Capital One Financial Corp.*, 179 F.3d 1337,

1340 (11ᵗʰ Cir. 1999)).  Clarifying the standard to employ when making this

determination, the *Kerr* Court explicitly stated that "[r]eceipt is presumed

when a complainant is unable to show that [his or] her failure to receive a

[right-to-sue] letter was in no way [his or] her fault."  *Id*.  In Henderson's

case, it is clear that he knew that he had received mail at the address he

supplied the EEOC, as he admits in his complaint that he "was getting mail" at his Creekway Drive address, but that he waited until he got a day off work to go over to that address (his mother's house) and obtain that mail. (Doc. 1, p. 3.)  Contrary to Henderson's apparent belief, his sister's refusal to bring the mail to him does *not* amount to a showing that his failure to receive the EEOC's letter was in no way his own fault.  To allow Henderson to claim the date that he finally bothered to make the trip over to his mother's house as the date he received the letter from the EEOC would, in the undersigned's opinion, facilitate an "manipulable open-ended time extension which could render the statutory limitation meaningless."  *Lewis*, 673 F.2d at 1242.

Furthermore, if Henderson has or had moved away from the address that he supplied to the EEOC, it was and is his duty to provide the Commission with an updated address.  As the Eleventh Circuit relayed in *Lewis*, 673 F.2d at 1243, "[w]e believe it to be fair and reasonable for the plaintiff . . . to assume the burden of advising the EEOC of address changes or to take other reasonable steps to ensure delivery of the notice to his current address."  The *Lewis* Court explained its reasoning: "If [the plaintiff] did not contribute that minimum assistance to the process, he should not be heard to complain that he did not receive the letter delivered to the last address known to the EEOC" unless he can show that his failure

13

to receive the letter was through no fault of his own or due to circumstances beyond his control. *Id.* This legal burden was codified in 29 C.F.R. § 1601.7(b), which states:

> The person claiming to be aggrieved has the responsibility to provide the Commission with notice of any change in address and with notice of *any prolonged absence* from that current address so that he or she can be located when necessary during the Commission's consideration of the charge.

*Id*. (emphasis added). Based on the preceding authority, Henderson's failure to check the mail he was receiving at the address supplied to the Commission signifies that he "received" the EEOC's right-to-sue letter on July 9, 2009, a date three days after the EEOC mailed the letter on July 6, 2009. *See* Doc. 7, p. 13 (right-to-sue letter from EEOC to Henderson bearing a mailing date of July 6, 2009). Henderson's 90-day window, then, closed on October 7, 2009– well before his actual filing date of November 20, 2009.

### D.     Equitable Tolling Does Not Avail Plaintiff Henderson

Mentioning that EEOC's ninety-day requirement "may be subject to tolling and waiver," the Fifth Circuit in *Espinoza* resolved this initial uncertainty by stating:

> Now that we recognize that the ninety-day period [after receiving a right-to-sue letter from the EEOC] is akin to a statute of limitations, and is subject to equitable tolling, we may adopt a rule which serves the purpose of the statute while at the same time providing relief in extreme cases . . . We

14

> hold that the giving of notice to the claimant at the address
> designated by him suffices to start the ninety-day period
> unless the claimant, through no fault of his own, failed to
> receive the right-to-sue letter or unless, for some other
> equitable reason, the statute should be tolled until he actually
> receives notice.

*Espinoza*, 754 F.2d at 1249-1250.  Over two decades later, in *Jackson v. Astrue*, 506 F.3d 1349 (2007), the Eleventh Circuit defined "traditional equitable tolling principles" independent of any particular statute, listing them as requiring "that the claimant demonstrate *extraordinary circumstances*, such as fraud, misinformation, or deliberate concealment." *Id*. at 1355 (emphasis in original).    Again, Henderson's refusal to check the address he provided to the Commission for mail concerning communications with the EEOC certainly does not amount to an extraordinary circumstance, nor can his negligence in this regard be interpreted as being through no fault of his own.  Tellingly, when the *Espinoza* Court decided that the plaintiff at issue "ha[d] not even come close to the kind of showing required to invoke the doctrine of equitable tolling," it harped on the fact that the plaintiff "offered absolutely no explanation for his failure to file suit within the eighty-two day period that remained" after his *actual* receipt of the letter.  *Espinoza*, 754 F.2d at 1251.  Here, Henderson waited, by his own admission, some fifty-nine (59) days after reading the letter on September 22, 2009 to file his claims, despite the fact that he still had 16 days in which to do so within the EEOC's ninety-day window.  (Doc. 1, p. 3.)  Finally, Henderson's

15

status as a *pro se* litigant neither excuses this procedural negligence nor provides

the undersigned with a compelling reason to toll the statute.  "Plaintiffs that

proceed *pro se* are not excused from complying with the established statute of

limitations."  *Marshall*, 2005 WL 3132352 at \*2 (citing *Moon v. Newsome*, 863

F.3d 835, 837 (11th Cir. 1989)).

## III.    Conclusion.

For all of the foregoing reasons, it is the undersigned's

recommendation that Defendant's Fed.R.Civ.P. 12(b)(6) Motion to Dismiss,

(Doc. 6) be **GRANTED** and that Plaintiff's claims be **DISMISSED**.

The instructions that follow the undersigned's signature contain

important information regarding objections to the report and

recommendation of the Magistrate Judge.

**DONE** this 12th day of March, 2010.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[1] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[1] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  Fed.R.Civ.P. 72(b)(2).